## Norton Coal Mining Company et al. v. Circle City Coal Company.

(Decided May 23, 1933.)

C. J. WADDILL and JOHN T. EDMUNDS for appellants.
GORDON & GORDON & MOORE for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The appellee, Circle City Coal Company, owned lands in Hopkins county which it leased in 1924 to McIsaac and Hawley. It appears that those gentlemen

operated other mines in the Western Kentucky coal field, and also that this lease was from time to time assumed by three different corporations owned or controlled by them. Each was a reorganization of the preceding one, the last being the Carbondale Coal Corporation. The Baltimore Trust Company had a mortgage on its leases and equipment. That company brought suit to foreclose the mortgage in the United States District Court, and this lease was placed in charge of a receiver. During the receivership the mines were operated for the receiver by the Norton Coal Mining Company, with the acquiescence of the lessor. That company was a Maryland corporation and was under the active management of Monro B. Lanier and Sterling S. Lanier. Those gentlemen seem to have represented the Baltimore Trust Company in respect to its business with these coal mines. The property of the Carbondale Coal Corporation was bid in by the trust company or its agents.

The royalty was in arrears, and the Circle City Coal Company regarded the lease as forfeited under its terms and made inquiry of the trust company as to what should be done. There was an exchange of several communications, and a conference was had in Baltimore in April with the officers of the trust company and Monro B. Lanier. Frank Fehr, of Louisville, and Frank A. Hecht, of Chicago, officers of the Circle City Coal Company, owned individually $100,000 in bonds of that company and were concerned with protecting their interest. They objected to further depletion of the property and insisted upon a new lease being executed. In the spring of 1927, negotiations were conducted between these gentlemen and their associates and the Laniers looking to the making of a new lease. Some of the parties and their attorneys had a conference in Louisville at which an agreement was reached. A formal lease was executed by the Circle City Coal Company, as lessor, but the name of the corporation in which the Laniers desired the lease to be taken was left open, since it had not been organized at that time. The lease which had been drafted and presented at this conference was not altogether satisfactory as it pertained to the royalties. Pursuant to an agreement, local counsel for the Laniers and the Baltimore interests prepared a draft of a letter to be signed by the lessee and attached

to the formal lease. The lease signed by the Circle City Coal Company and the proposed letter were sent to Mr. Lanier at Baltimore on May 21st. He acknowledged their receipt and advised that the papers had been executed and the letter signed. In due course the lease and the letter were received. Both papers were signed, "The Nebo Coal Company, by John S. Short, Vice President." On May 7th, Mr. Lanier, signing as president (apparently of the Norton Coal Mining Company), wrote to the vice president of the Circle City Coal Company that until the new arrangement should be perfected the mines would be operated under the contract with the receiver, and that under the new arrangement the Norton Coal Mining Company would have entire charge of the operations. On June 15th, Mr. Short wrote that the Nebo Coal Company was formed as a holding company until there could be a reorganization or a readjustment of the relations of the bondholders of the old company with respect to the assets of the new company, and that pending that reorganization the properties would be operated by the Norton Coal Mining Company under the same arrangement as that made with the receiver, "except in so far as this arrangement has been modified by agreement with Mr. Lanier for the strip output." It appears that plans were on foot to create a more permanent scheme to take over this lease, and that the Nebo Coal Company was intended to hold the properties until the new arrangement could be made. However, no change was ever made.

After a time suit was brought by the Circle City Coal Company against the Norton Coal Mining Company and the Nebo Coal Company, claiming $14,248.22 as a balance due on the minimum royalties agreed to be paid from June 1, 1927, to June 1, 1929, on coal taken from the strip mines. An additional $3,000 was claimed as royalties on coal which should have been taken from under ground. The defendants' response was that the operations of the mine had been conducted under the old lease executed in 1924 with McIsaac and Hawley, under which the Norton Coal Mining Company had operated the mine during the receivership. That lease did not provide for these minimum royalties. It was further claimed that there was an understanding that the new lease would not become effective until Fehr and Hecht had waived or subordinated their lien on the Circle City Coal Company property in favor of the

rights of the new lessee, and that the new lease would never have been executed or the obligations incurred under it with that lien remaining superior to their rights.

The issue seems narrowed to the question as to whether the coal during the period involved had been extracted under the old or under the new lease. The court found that it was taken out under the lease with the Nebo Coal Company.

In this coal field there are fourteen different strata or seams of coal at varying depths. No. 14 is closest to the surface and the most valuable. No. 9 is a considerable distance under the surface, and it alone of the others seems to have been workable. No. 14 coal was obtained by stripping the surface from it with steam shovels and other machinery. The original McIsaac-Hawley lease provided only for the mining of the No. 14 seam of coal. The new lease provided also for the mining of No. 9 seam by shafts and elevators. The evidence is conclusive that the new lessees made tests as to the No. 9 coal and bought machinery and equipment for the purpose of taking it out, although they do not appear to have recovered any of that coal. It was claimed also by the defendants that the No. 14 coal had been practically exhausted at the commencement of the new lease, and nothing was due under it because of the exhaustion. There had been subsequently removed from this seam over 115,000 tons of coal, and there is little, if anything, in the record to support the plea of exhaustion. It does not appear that either company had any right to be on the premises except under the new lease and the agreement made by correspondence. The operations were conducted in the name of the Norton Coal Mining Company, and the reports to the lessor as to the quantities mined were in the name of that company until November, 1927, and thereafter were in the name of the Nebo Coal Company, but all were signed "H. N. Robinson, Treasurer." Invoices were made in the name of both companies.

In August, 1929, M. B. Lanier wrote the Circle City Coal Company that he saw no chance for the immediate operation of the lease, and the matter of its cancellation was taken up with the suggestion of the payment of $1,500 royalty on the deep coal and the surrender by the Nebo Coal Company of its machinery. As suggested

above, the old lease did not provide for the mining of any deep coal.

We are of the opinion, therefore, that the evidence clearly showed that these operations were under the new lease made with the Nebo Coal Company.

The defendants introduced evidence to the effect that the operations were not to be conducted under the new lease until there had been a release of the lien notes or bonds held by Fehr and Hecht. This claim might well be disposed of upon the technical ground of a merger of the preliminary agreements and negotiations into the executed contract (Riner v. Catron, 230 Ky. 290, 19 S. W. (2d) 970), but there was evidence that such a release had been executed and sent along with the lease to Monro B. Lanier. While S. S. Lanier and local counsel for the Lanier interests testified they had no knowledge of the release having been received, neither Monro B. Lanier nor any of the other officers of the company testified, and, for aught that the record discloses, they may have had it in possession for the company.

It is argued that it was error to render a judgment against both companies. It would seem that these two companies were the alter ego of each other. See United States v. D. L. & W. Railroad Company, 238 U. S. 516, 35 S. Ct. 873, 59 L. Ed. 1438; L. & N. Railroad Company v. Carter, 226 Ky. 561, 10 S. W. (2d) 1064; Lowry Watkins Mortgage Company v. Turley-Bullington Mortgage Company, 248 Ky. 285, 58 S. W. (2d) 591. But whether that be so or not, it is clear that there was a joint operation by the two corporations. It was proper, therefore, for judgment to go against both companies.

However, it is conceded by all parties that the judgment is erroneous in awarding $3,000 on account of the deep coal. That part of the petition claiming this royalty had been stricken, and the judgment for it was doubtless an inadvertence. It becomes necessary, therefore, to reverse the judgment in order to correct that error.

The judgment is reversed, with directions to reenter it in favor of the plaintiffs for the $14,248.22 with interest.