## BALTIMORE TRUST CO. et al. v. NORTON COAL MINING CO. et al.
### No. 808.

District Court, W. D. Kentucky, Louisville.

Jan. 14, 1939.

Frank M. Drake, of Louisville, Ky., for receiver.

Crawford, Middleton, Milner & Seelbach, of Louisville, Ky., for trustee.

E. M. Nichols and Abner Johnston, Jr., both of Madisonville, for Circle City Coal Co.

SWINFORD, District Judge.

The Baltimore Trust Company instituted this proceeding to liquidate the affairs of the Norton Coal Mining Company. The Nebo Coal Company is a subsidiary of the Norton Coal Mining Company. The Circle City Coal Company is asserting a claim against the Nebo Coal Company and it is to determine the validity of the claim that the record is now before the Court.

On May 21, 1927, the Circle City Coal Company leased to the Nebo Coal Company certain Coal Mining properties in Western Kentucky. By the terms of the lease the Nebo Coal Company was to, "open, develop and operate upon the leased premises a thoroughly modern underground mine, with a capacity of not less than one thousand (1000) tons per day, the opening and development of said mine to begin or on before January 1, 1929; and it shall continue the operation of said mine in good faith until the expiration of the term of this lease."

The lease provided further that the lessee was to pay the lessor 5 cents per ton on all coal mined by the underground method and 10 cents per ton on all coal mined by the stripping or open pit method. The lease contained this additional provision: "The Lessee agrees and undertakes to produce from the leased premises at least Thirty Thousand (30,000) tons during the year, 1929; Sixty Thousand (60,000) tons during the year 1930, and One Hundred Thousand (100,000) tons of coal during the year 1931, and a like amount during each succeeding year following the year 1931, prior to the year 1947, and the Lessee shall on or before the 25th day of January in each year beginning in the year 1930 pay to the Lessor the royalty on said minimum tonnage of coal whether the same shall have been actually produced or not, subject, however, to the terms of paragraph 4."

The Nebo Coal Company, either itself or through the Norton Coal Mining Company, operated a strip mine on the property until August 1929. The underground mine was never developed. The first year's minimum royalty on the underground coal was due January 25, 1930. Ten days before this royalty was due the lessor, Circle City Coal Company, brought suit against the Nebo Coal Company, lessee, and the Norton Coal Mining Company, in the Hopkins County Circuit Court. This suit was to recover both the earned royalty on the strip mining and the alleged first year's minimum royalty on the underground operation, which the lessee had never begun.

The defendants in the state court proceeding moved to strike from the petition the claim for the royalties on the underground mine on the ground that the royalties for this operation were not due and the action as to it was premature.

This motion was sustained and the plaintiff never amended. No suggestion of record that such royalty had fallen due pendente lite was ever made.

The claim for the strip mining royalties was prosecuted to judgment for the plaintiff. From this judgment the defendants appealed. The judgment in so far as this claim was concerned was affirmed by the Kentucky Court of Appeals. See opinion in the case of Norton Coal Mining Company v. Circle City Coal Company, 249 Ky. 377, 60 S.W.2d 955. This case was decided and the opinion handed down on May 23, 1933.

On July 4, 1932, certain of the assets of the Nebo Coal Company located on the leased premises, including the leasehold itself, were sold under the judgment. At the sale a large quantity of the machinery was bought by Sterling S. Lanier, a representative of the Baltimore Trust Company, and the leasehold was purchased at the sale by Frank Hecht, one of the principal bond holders of the Circle City Coal Company. On October 1, 1933, Hecht assigned the lease back to the Circle City Coal Company, and thus formally merged and extinguished it.

The record in the instant case does not show wherein the Circle City Coal Company made any further attempt to collect the minimum royalty claimed to be due from the underground operation or rather failure on the part of the lessee to carry

out its agreement to develop the underground mining, until this claim was filed in this proceeding. The Circle City Coal Company offered to file its intervening petition on October 8, 1936, claiming approximately $17,000, the minimum royalty on the underground operation according to the terms of the lease of May 21, 1929.

To this claim the Trust Company and receiver for the Norton Coal Mining Company interpose five defenses.

First, that the filing of the claim was prohibited by an order of court in the receivership proceedings of the Norton Coal Mining Company. The record discloses that by proper orders of the court all claims were barred as of September 1, 1933; and by an extension order were further barred as of January 31, 1934; and by final order all claims not presented and adjudicated on or before July 7, 1936.

 This case was before the regular district judge for the Western District of Kentucky, before his elevation to the Circuit Court of Appeals for the Sixth Circuit. On December 11, 1936, he ordered the intervening petition of the Circle City Coal Company, setting up this claim, filed. The order is direct and unequivocal. It makes no reservations. By that action I cannot reconsider the motion to file the intervening petition. It is a matter that has been finally determined. Judges of co-ordinate jurisdiction cannot sit in review of the orders of their contemporaries in the same court and in the same case. A recent leading case on this question is Commercial Union of America, Inc. v. Anglo-South American Bank, Ltd., 10 F.2d 937. The opinion reviews many cases consistently adhering to the rule. I quote the following [page 938]:

"In Appleton v. Smith, 1 Fed.Cas. p. 1075, no. 498, Justice Miller (of the Supreme Court) sitting as a Circuit Justice in the district of Arkansas, in 1870, had before him a motion to quash an attachment levied on goods. He denied the motion, and in doing so said:

" 'Upon looking into the record of the case, I find that the same motion, based upon the same legal proposition, was made at the last term of the court, and was overruled by the last district judge, who at that time held the court. I have repeatedly decided in this circuit, since I was first assigned to it, that I would not sit in review of the judgments and orders of the court, made by the District Judges in my absence. Where, as in the present case, the motion is made on the same grounds, and with no new state of pleadings or facts, it is nothing more than an appeal from one judge of the same court to another, and though it is my province in the Supreme Court to hear and determine such appeals, I have in this court no such prerogative. The district judge would have the same right to review my judgments and orders here as I would have in regard to his. It would be in the highest degree indelicate for one judge of the same court thus to review and set aside the action of his associate in his absence, and might lead to unseemly struggles to obtain a hearing before one judge in preference to the other. I have also held, and have prescribed it for myself as a rule of conduct, that the presence of the District Judge, and his consent to a review of his decision, will not vary the course to be pursued.' "

It is insisted by counsel that the filing order was tentatively entered and only for convenience; that the Judge was going to review the ruling upon a final submission. This true a change in the personnel of the court works a hardship, but I can only take the record as I find it. The claim must be treated as having been properly filed.

Second, it is urged that the claim is barred by laches.

 Laches is the unreasonable delay of a complainant in bringing suit and applies only to equitable not to legal titles or claim. It has repeatedly been said by courts of the highest authority that, "there is a defense peculiar to courts of equity founded on lapse of time and the staleness of the claim, where no statute of limitation governs the case. In such cases, courts of equity act upon their own inherent doctrine of discouraging, for the peace of society, antiquated demands, refuse to interfere where there has been gross laches in prosecuting the claim, or long acquiescence in the assertion of adverse rights." Badger v. Badger, 2 Wall. 87, 94, 17 L.Ed. 836; Sullivan v. Portland, etc., R. R. Co., 94 U.S. 806, 24 L.Ed. 324; Harwood v. Railroad Co., 17 Wall. 78, 21 L.Ed. 558.

 One of the beautiful maxims of equity jurisdiction is prompted by this rule. "Equity aids the vigilant only, not those who slumber on their rights."

■ In the case at bar, I can see no ground to apply the doctrine of laches. In fact it should only be applied in extreme cases and where some litigant has been placed in a more precarious position by reason of the length of time that has elapsed and because of this has been lulled into a false sense of security. To apply the doctrine of laches and bar a claim that appears otherwise just is for the court to step out of character and exercise a legislative function. Where by reason of length of time the claim has become stale and a defense would be difficult or practically impossible to establish justice (equity) requires that a defendant should not thus be wronged.

■ The case at bar presents no such situation. In so far as the litigants here are concerned there is no defense that was formerly available that cannot now be presented with equal force and clarity. No witnesses are absent, no facts are obscured by time. Practically every fact is agreed between the parties. That defense is unavailable here. Gibson's Adm'r v. Gibson et al., 241 Ky. 74, 43 S.W.2d 343; Webb v. Tri-State Fair & Racing Ass'n, 239 Ky. 87, 36 S.W.2d 839.

■ The third defense, that the lessee abandoned the lease and the lessor acquiesced in such abandonment, is without merit. There was nothing the lessor could do about the abandonment of the lease by the lessee. A tenant who walks off of the landlord's property without paying the rent cannot claim an acquiescence in the wrong by the landlord simply because he does not within a reasonable time take legal proceedings. Frequently it is to the advantage of both to say very little about the matter. 16 R.C.L. 1106 (Landlord & Tenant § 623).

The fourth defense advanced by the Trust Company and the receiver is that the Nebo Coal Company was excused from performance of the terms of the lease by reason of the legal proceedings instituted by Circle City in the Hopkins County Circuit Court. That this was, in effect, a suit to cancel the lease and under well recognized authorities the complainant here could not ask a cancellation of the lease and at the same time claim royalties.

The soundness of this rule is accepted but its application here is questioned. It was this identical question that was determined in the State court. In that proceeding the validity and binding effect of the lease was decided. Instead of seeking to cancel the lease the Circle City Coal Company was insisting that it was valid and trying to establish it. This it succeeded in doing.

At no place in its pleading in the case in the State court did it ask a cancellation of the lease. On the contrary it plead that the lease not be canceled.

I do not have the petition filed in the State court before me, but counsel for the claimant in their brief set out the following language as a quotation from that petition:

"Defendants have no desire or intention to open or develop any underground mine on said property, and have ceased all operations of every kind thereon and have no intention of resuming said operations and are seeking to induce plaintiff to cancel said lease and to release defendants from the obligations of said lease which plaintiff has declined and now declines and refuses to do."

The lessees ceased operation on the premises in August of 1929 and the court action by the lessor was not taken until January of 1930. Nothing had been done to carry out the terms of the lease with reference to mining the underground coal and no mining of any kind had been done for more than five months. I am unable to find in the record any explanation for the apparent abandonment of the premises by the lessee. There is this stipulation of fact:

"No deep mine was ever installed, and by August 12, 1929, at which time, as suggested, all operations were abandoned by Lessee, the obligation to install the deep mine by January 1, 1929, had been violated and breached."

The Court fully understands that the coal business at this time was in an unprofitable state and it is likely by reason of these conditions that the leasehold was abandoned.

■ Counsel for the trustee and receiver call attention to many authorities which they contend sustain their position on this point. A reading of them discloses that in each instance there was an effort on the part of the lessor to have the lease adjudged cancelled. Here the contrary appears. By the terms of the lease the lessor could cancel it upon failure of payment of the royalties. I cannot find in the record and my attention is called to no fact that indicated that Circle City did anything to-

ward taking possession of the property or interfering with the possession of the lessee for many months after the admitted abandonment by the lessee. A court of equity will not aid a party to a contract who has not performed his own obligation under the terms of the contract. Williamson v. Ingram, 243 Ky. 749, 49 S.W.2d 1005; O'Bryan v. Mengel Co., 224 Ky. 284, 6 S.W.2d 249.

It would serve no purpose to burden this already too lengthy discussion by a citation of additional authorities. I am of the opinion that the abandonment of the premises by the lessee was entirely voluntary and that the lessor did not interfere with its possession or enjoyment.

The fifth and final defense which is strongly urged by the trust company and receiver is that this claim should not be allowed because the intervening petition is an attempt to split the alleged cause of action. In reality the ruling on the admission of the intervening petition to record applies here. It might well be assumed that this question was raised by the trustee and receiver at the time the intervening petition was offered. However, I will treat the question on its merits.

It is insisted that the nature of the transaction was such that all of the differences between the parties should have been settled in one action and that the court should not permit the claimant to break up its claims into several different court ventures.

The position of the trust company and receiver is best expressed in their counsel's brief:

"That is to say, Nebo Coal Company, by its refusal to install the deep mine and its repudiation of its entire contract, gave ground to Circle City for but one entire and indivisible cause of action and when Circle City failed to assert it in the suit filed January 15, 1930, in the Hopkins Circuit Court, it lost forever after its right to base an action upon the lease."

The rule is well stated in the case of Anderson's Administrator v. Meredith, 9 S.W. 407, 408, 10 Ky.Law Rep. 460, 461: "the peace and repose of society must * * * be regarded, rather than individual hardship, and they require that when parties proceed to a judgment, it shall be regarded as an end, not only to what was actually put in dispute, but of all matters that could and properly should have been embraced in the suit."

And as is said in the case of Dils v. Justice, 137 Ky. 822, 127 S.W. 472, 473: "the plaintiff can sue once; but he must then set up his whole cause of action. He cannot sue in successive actions for different parts of the same thing."

The reason for this rule is evident and the authorities cited by counsel to support it are cases in which it was apparently properly applied, but to apply it here would be unjust and unfair and to penalize the diligence shown by the Circle City Coal Company.

It is at best a rule of procedure intended for the most admirable purpose of preventing the harassment of persons in business and for the peace of society generally, and to prevent a multiplicity of actions. To all of this the Circle City Coal Company must have subscribed when it sought full and complete relief in the case in the Hopkins County Circuit Court. It was prevented from doing so by a nicety of procedure insisted upon by Norton Coal Mining Company, defendants in that action. It was on their motion that the proceedings were split originally. They insist here that they had abandoned the leased premises in August 1929, but claimed that the action insofar as the deep mining was concerned was ten days premature.

To determine whether a contract is severable or to be treated as an entirety we must look to the intention of the parties to be gathered from the contract and their attitude toward it. O'Bryan v. Mengel Company, 224 Ky. 284, 6 S.W.2d 249.

The nature of the lease was such that an action could be maintained on either or both mining operations. This fact is res judicata by the action of the State court in dismissing the claim for the underground mining operations. By that action it adjudged that the claims must be dealt with separately.

Without further discussion of this defense suffice it to say that to defeat an otherwise just claim by applying this rule under the facts here would be decidedly unjust and a complete departure from the modern trend of deciding controversies on their merits without resort to the technicalities of pleading.

I am of the opinion that the Circle City Coal Company did not attempt to split its causes of action.

None of the defenses go to the merits of the claim or deny that the minimum royalties are due under the terms of the lease.

It is pointed out and I have no doubt that no claim would have been made had certain assets not been brought to light through the hard work and capabilities of Mr. Drake, the attorney for the receivers. In other words, no claim was made where there appeared to be no need to make one. Such an attitude on the part of creditors may or may not be proper, but it is certainly natural and where no statute of limitation has intervened and no person made to suffer such attitude is not a defense.

The intervening petitioner should have judgment for its claim. Appropriate findings of facts, conclusions of law and judgment should be submitted in accordance with this opinion.