Argued October 2, affirmed November 10, 1925.

## JACK STARVAGGI. v. MARY LUDDEN.

### (240 Pac. 432.)

**Contracts—When Party to Contract, Obligating Other to Make Advances Essential to Performance of Contract, may Rescind.**

1. Where it is an essential part of a contract that one party shall from time to time make advances in money to the other which are requisite to enable such other party to carry out his part of the agreement, a repudiation of the agreement to make advances, without warrant by the existing conditions, prevents performance by the other party in such sense as gives him the right to rescind.

**Mortgages—Contemplated Purchaser Viewing Mortgaged Premises not Required to Disclose to Mortgagor Object of Investigation.**

2. Party viewing mortgaged premises in contemplation of purchasing note and mortgage is not required as matter of law to disclose to mortgagor object of investigation.

**Bills and Notes—Intentional Ignorance of Person Taking Note Under Suspicious Circumstances may Result in Bad Faith.**

3. While negligence is not synonymous with bad faith, yet, where a person who takes a' note under suspicious circumstances, and having the means of knowledge, willfully abstains from making inquiries, his intentional ignorance may result in bad faith.

**Mortgages—Evidence Held to Justify Finding That Assignee of Note and Mortgage was not Purchaser in Good Faith.**

4. Evidence *held* to justify finding that plaintiff assignee of a note and mortgage had notice of the mortgagee's alleged fraudulent acts, and that he was not a purchaser in good faith within Sections 7820, 7844, 7851, Or. L.

From Multnomah: GEORGE TAZWELL, Judge.

Department 2.

This is an appeal from a decree dismissing a suit brought to foreclose a mortgage given by the defendant to one Chas. Jones to secure the payment of a promissory note in the sum of $1,300 and assigned by Jones to the plaintiff. The trial court held

1. See 6 R. C. L. 929–931.
3. See 3 R. C. L. 1072.

that the plaintiff was not entitled to foreclose the mortgage for the reason that he "has no rights in the premises of any kind, name, or nature, and is not an innocent purchaser for value received, which fact is hereby found."

The appellant alleges a total failure on the part of defendant to establish any defense to the complaint, and asserts that the court erred in relieving defendant without requiring her to do equity by returning to plaintiff the sum of $225.90 paid by Chas. Jones to Ritter, Lowe & Company for the credit of defendant; in rendering the decree against the plaintiff; and in finding that the plaintiff was not entitled to foreclose the mortgage described in the complaint.                                    AFFIRMED.

For appellant there was a brief over the name of *Mr. Henry Hartje* and *Messrs. Johnson & Handley,* with oral arguments by *Mr. Hartje* and *Mr. S. S. Johnson.*

For respondent there was a brief over the names of *Mr. Thomas Mannix* and *Mr. Thomas G. Connolly,* with an oral argument by *Mr. Mannix.*

BROWN, J.—Was the plaintiff a purchaser in good faith of the commercial paper involved in this suit?

On July 29, 1920, Mary Ludden, defendant herein, held in trust for her uncle and aunt, Patrick M. Conlon and Annie B. Conlon, Lots 6, 7, 8, 9 and 10, in Block 7, Taborside, in the City of Portland, Multnomah County, Oregon. Prior thereto, Chas. Jones had made and entered into a contract to buy Lot 26, Mt. Scott Acres, from Robert L. Davis and Edna B. Davis, husband and wife. Thereafter, Jones

and Conlon entered into negotiations for the assignment to Conlon of Jones' contract for the purchase of the lot in Mt. Scott Acres. While the negotiations between Conlon and Jones were pending, the former asserted his inability to make the payments provided for by the Davis-Jones contract, whereupon, as an inducement to Conlon to purchase the lot, Jones falsely pretended and represented to Conlon that he would advance to Conlon the necessary funds to meet the monthly payments as they matured under the Davis-Jones contract. Likewise, in furtherance of his scheme to procure the commercial paper involved in this suit, Jones made and entered into the following written agreement with Conlon:

"July 29, 1920.

"Mr. P. M. Conlon,

"City.

"Dear Sir:

"Referring to transaction which you are making for Lot No. 26, Mt. Scott Acres; and,

"Whereas, I am assigning to you a certain contract entered into on June 25, 1920, by and between Robert L. Davis and Edna B. Davis, husband and wife, and Chas. Jones, for the purchase of said property, on which said contract by monthly payments of $150 each, together with interest at the rate of six (6) per cent. on deferred payments are to be made; and,

"Whereas, you are uncertain as to whether you will be able to make these payments promptly when they become due;

"Now, therefore, I hereby agree, should you be lacking in funds to make up these payments when they become due, to make up the deficiencies myself.

"Should it be necessary for me to advance money to Mr. Conlon as per this letter, Mr. Conlon agrees to secure such amounts which I advance from time to time by his personal notes.

                    "Yours very truly,
                              "CHAS. JONES.
                              "P. M. CONLON."

Relying upon the false pretenses and fraudulent representations made by Jones, Mary Ludden made and executed to him her promissory note for $1,300, secured by a mortgage upon the Taborside property above described. Thereafter, Conlon, assignee of the Davis-Jones contract, being unable to make the payments thereunder, called upon Jones for $150 pursuant to the terms of the written contract above set out, whereupon Jones repudiated his agreement. Suit was immediately instituted in the Circuit Court to secure the cancellation of the mortgage and Jones was served with process, the real property securing the mortgage lien, together with the note and mortgage, being described in the complaint. Thereafter, Jones sold and assigned the note and mortgage to this plaintiff for $973, notwithstanding its face value was $1,300. This is the mortgage involved herein.

1. The rescission of the contract between Conlon and Jones is based upon the nonperformance thereof by Jones. Where it is an essential part of the contract that one party shall from time to time make advances in money to the other, which are requisite to enable such other to carry out his part of the agreement, a repudiation of the agreement to make such advances, without warrant by existing conditions, prevents performance by the other party in such sense as gives him the right to rescind: 1 Black on Rescission and Cancellation, p. 534, and authorities under note 147. The defect in the performance

by Jones of his contract substantially defeated the intended object of the parties as expressed therein. The defendant was authorized to rescind.

2. Defendant defends against the mortgage foreclosure suit on the ground that there was an absence and failure of consideration for the note. It is clear that the fraudulent representations of Jones entered into, and constituted a part of, the consideration of the note and mortgage in question. Oregon Laws, Section 7820, provides:

"Absence or failure of consideration is matter of defense as against any person not a holder in due course. * * *"

Section 7844 provides:

"A holder in due course is a holder who has taken the instrument under the following conditions: * *

"(3) That he took it in good faith and for value;

"(4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Section 7851 is as follows:

" * * When it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he, or some person under whom he claims, acquired the title as a holder in due course."

The plaintiff testified that he conducts a cigar and confectionery store on Third and Madison Streets, Portland, Oregon; that he had known of Jones for about two months prior to the assignment of the note and mortgage involved herein; that, when Jones approached him in an attempt to sell him for less than $1,000 the $1,300 note secured

by mortgage, he advised with his attorney who properly told him to look up the value of the security; that Jones and plaintiff made a visit to the Conlon property, Jones representing to Conlon that the plaintiff was there to purchase fruit, and that neither the plaintiff nor Jones made any representations to Conlon or to anybody else that they were there for the purpose of investigating the value of the security, or that plaintiff contemplated the purchase of the note and mortgage. Such disclosure, as a matter of law, was unnecessary. However, in the light of the following testimony, it would seem that the plaintiff made an active investigation as to the value of the land given as security for the payment of the note and mortgage, but that, when he was put on his guard as to certain trouble concerning the same, instead of trying to ascertain the facts in relation thereto he deliberately shut his eyes to the real situation, refused to interest himself therein, and shunned all information as to Jones' title to the note and mortgage.

Conlon testified that, during the visit of plaintiff and Jones to Conlon's place of residence, Jones said to witness, referring to the suit filed in Circuit Court against Jones:

" 'Conlon, I will settle up with you Tuesday'; and I said, 'That is what I want. I want my note back and my mortgage back'; and that is what I brought the suit for, to have them canceled."

On being recalled to the witness-stand to rebut the effect of Conlon's testimony, the plaintiff testified that he didn't hear what Conlon said to Jones.

However, his testimony is most illuminating:

"Q. If he had said that (I want my note and mortgage back), do you think you would have heard it?

"A. * * I didn't hear anything like that. He talked about some paper of some kind. I didn't hear anything. I run away. * * "

On cross-examination, he testified:

"Q. What kind of paper did you hear about there?
"A. Nothing at all. I hear about some kind of a paper and I run away.
"Q. You heard about some kind of a paper?
"A. No, I run away.
"Q. You run away?
"A. I didn't hear. He talked about some kind of a paper and I run away?"

On redirect, he testified:

"Q. What do you mean by 'running away'?
"A. He talked some kind of paper; I run away. I feel they had some trouble. * * "

Notwithstanding the plaintiff went out to view the security in order to ascertain its value, when the evidence of the lien constituting the security was mentioned he fled. It is not in the nature of things for an innocent purchaser to run away upon the mentioning of the commercial paper he is about to purchase. This is an especially significant circumstance in view of the fact that he was buying the note and mortgage at more than $300 less than its face value of $1,300, from a man with whom he had previously had no business dealings and with whose reputation for honesty and integrity he was utterly unacquainted.

3. In the case of *Everding & Farrell* v. *Toft*, 82 Or. 1 (150 Pac. 757, 160 Pac. 1160), this court, speaking through Mr. Justice HARRIS, said:

"While negligence is not synonymous with bad faith, yet a person who takes a note under suspicious circumstances and, having the means of knowledge, willfully abstains from making inquiries, then

his intentional ignorance may result in bad faith, because the final question is one of honesty and good faith: 3 R. C. L. 1075; 8 C. J. 505; *Griffith* v. *Shipley,* 74 Md. 591 (22 Atl. 1107, 14 L. R. A. 405); *Bowman* v. *Metzger,* 27 Or. 23, 31 (39 Pac. 3, 44 Pac. 1090); *Benton* v. *Sikyta,* 84 Neb. 808 (122 N. W. 61, 24 L. R. A. (N. S.) 1057); 7 Cyc. 946.''

This is so well established that it would seem unnecessary to cite further authority.

4. The cause under consideration was a contest where fraud is charged upon the one hand, while upon the other good faith is averred. From the very nature of the case and the evidence adduced by the parties, the trial court, who heard the witnesses testify and observed their demeanor while upon the witness-stand, had the added advantage of the atmosphere of the trial in deciding as to the truth or falsity of the testimony given, and should thereby have been enabled to judge with greater accuracy as to the plaintiff's good faith when purchasing the paper forming the subject matter of this suit than it is possible for this court to determine from the cold typewritten pages before us. The record authorized the trial court to find, in effect, that the plaintiff had notice of Jones' alleged fraudulent acts and that he was a purchaser in bad faith of the note and mortgage. There is nothing in the transcript before us to indicate that Conlon is untruthful, or that the plaintiff did not mean what he said when he testified to his flight when Conlon referred to the paper in question.

One who purchases commercial paper cannot be permitted to disregard his obligation of good faith by closing his eyes and refusing to hear; and this denial to a litigant of the right to foreclose a mort-

gage obtained by fraud and purchased in bad faith does not impair the true value of negotiable instruments.

This case should be affirmed. It is so ordered.

AFFIRMED.

MCBRIDE, C. J., and BEAN and BELT, JJ., concur.