Argued July 19; reversed September 6; rehearing denied
October 17, 1933

# STATE ᴇx ʀᴇʟ. MITCHELL *v.* UNITED STATES FIDELITY & GUARANTY CO. ᴇᴛ ᴀʟ.

(24 P. (2d) 1037)

*William P. Lord,* of Portland (Lord & Moulton, of Portland, on the brief), for appellants.

*George S. Shepherd,* of Portland, for respondent.

KELLY, J. Two questions are presented upon this appeal. One is whether recovery may be awarded for

the partial performance only of a contract where the other party thereto has received and retains benefits by reason of such partial performance. The other is whether in an action wherein plaintiff seeks such a recovery counterclaims may be interposed by defendant based upon damages alleged to have been sustained in part by reason of plaintiff's failure to complete the contract and in part by the allegedly negligent manner in which plaintiff in certain respects attempted the performance thereof.

■ The first of these two questions arises by reason of the refusal of the trial court to direct a verdict in favor of defendants based upon the fact that complete performance by the relator was not shown. Defendants concede that in Oregon such recoveries have been approved. We are unwilling to overrule the cases so holding and find no error in the action of the trial court in overruling defendants' motion for a directed verdict.

The second of these two questions is based upon the action of the trial court in expressly withholding from the jury's consideration the issue as to the amount of damages alleged to have been sustained by defendant, Kernan, in completing the towage which relator had agreed to do; and also in withholding from the jury's consideration the issue as to the damages defendants claim that Kernan sustained by reason of the snagging of Kernan's barge.

On December 12, 1929, defendant, Kernan, entered into a contract with the State of Oregon, by the State Highway Commission, to perform and complete certain work on the Riverton-Bandon section of the Roosevelt Coast Highway in Coos county, Oregon. Defendant, United States Fidelity and Guaranty Com-

pany, was Kernan's surety upon the bond required by section 67-1101, Oregon Code 1930, under the terms of which section this action was instituted. In carrying out his said contract with the state, Kernan made use of large quantities of gravel which he caused to be transported from Reedsport by rail to a place on the Coquille river about four miles above Coquille, known as Johnson's spur, where it was loaded upon barges belonging to Kernan and towed down the Coquille river past Coquille and below Riverton to the place where Kernan's road improvement plant and equipment were located.

Kernan and the relator, Mr. J. D. Mitchell, entered into a written contract in which, among other things, it was agreed that relator would tow the barges loaded by defendant, Kernan, from said Johnson's spur to points of unloading below Riverton and to safely navigate the river and to safely, promptly and rapidly tow the barges; that relator would furnish the labor, fuel, towing gear and pumps, and maintain the same, and would tow the barges night or day or both, and promptly dispatch the barges as fast as they became loaded or unloaded.

The contract contained a provision that Kernan would pay plaintiff 10 cents per cubic yard delivered to the unloading place. An issue was presented as to whether, in this regard, the contract was later modified to provide for the payment of 14 cents instead of 10 cents for each cubic yard, but with that we are not now concerned. In the contract an estimate is set forth that 44,000 cubic yards were to be towed.

As far as the same are pertinent to the questions here presented, defendants' counterclaims are based upon defendants' allegations that the relator navigated

the river when the tide was ebbing and at a time when there was not sufficient water to safely navigate the river and thereby snagged the bottom of one of the barges whereby defendant, Kernan, lost 19 days' use of the barges to his damage of $25 per day; that relator, through an employee, breached the written contract between relator and Kernan jeopardizing Kernan's insurance, which caused Kernan to terminate the contract on October 3, 1930, and that thereupon Kernan proceeded to complete the towing of the remainder of the gravel to fulfill his contract with the State Highway Commission; that he paid 10 cents per cubic yard to the Moore Mill & Lumber Company for this towing amounting to $899.70, and that he employed a towboat for 38 days to assist in towing at the rate of $350 per month, thus expending $443.46.

Paragraph VIII of the amended answer alleges that the defendant, Kernan, has been damaged in the sum of $2,506.74, by the failure of relator to perform the contract of towage, this being the alleged difference between the amount that relator would have earned under said contract, had he performed it, and the amount paid relator by Kernan and other disbursements alleged to have been made by Kernan by reason of relators breach of the contract.

To support the trial court's action in taking from the jury the issue arising by reason of Kernan's claim for damages based upon the snagging of said barge, it is argued that such counterclaim is based upon the alleged payment by Kernan of $25 per day therefor to the state in accordance with the provision in Kernan's contract with the highway commission that such deduction should be made for each day required to complete said contract after the date therein agreed upon for

its completion, and that said counterclaim herein is not supported by any evidence tending to show that any such penalty or stipulated damages, or any part thereof, was exacted by the state or paid by Kernan. It is further argued that because counsel for defendants expressly stated to the trial court in discussing its instructions to the jury that no claim was being urged by defendants that any such penalty or stipulated damages or any part thereof had been paid by Kernan or charged against him by the highway commission, such counterclaim was out of the case. It is also urged that there is no evidence tending to prove that any damages were sustained by Kernan by reason of the snagging of said barge. It is also claimed that such counterclaim is unavailing herein by reason of the provisions of section 4283, U. S. Rev. St., and section 3 of the Harter Act, 29 Stat. 445, (Sections 183 and 192, Title 46, U. S. Code, Annotated).

In justification of the trial court's action in taking from the jury the issue arising by reason of defendants' counterclaim for moneys alleged to have been expended by Kernan to complete the towage which relator had agreed to do, it is argued that in alleging in their further and separate amended answer that on account of relator's breach of said contract, defendant, Kernan, cancelled and terminated said contract on October 3, 1930, defendants are not entitled to interpose a counterclaim based upon any expense alleged to have been incurred in subsequently securing the performance of that part of said contract which relator did not perform.

■ It is also contended that only an omnibus exception was saved by defendants and that such exception is

not sufficient to entitle defendants to present the question as to whether the trial court erred in withholding the issues upon said counterclaim from the consideration of the jury.

With respect to the last mentioned contention, the bill of exceptions discloses that defendants excepted to the instructions of the court as set forth on pages 340, 341 and 342 of exhibit A and that said exhibit A is a full, true and correct copy of the testimony taken and proceedings had upon the trial of this cause.

By reference to pages 338 and 339 of said exhibit A, we find the following colloquy between the trial court and defendants' counsel, which occurred immediately before the jury retired to the jury room:

"The Court: Anything, Mr. Lord?

Mr. Lord: Why, I have a suggestion to make Your Honor. I don't know whether it is in the form of an exception or in the form—

The Court: This is for additional instructions if you have any.

Mr. Lord: You stated, Your Honor, that Mr. Kernan was claiming that he was penalized $25 a day by the state on account of the sinking of the barge. Now no such issue was ever made in this case nor was there any testimony given in the case    *    *    *

The Court: That is the reason that this is out.

Mr. Lord:    *    *    *    in which Kernan stated that if he didn't get his work done by a certain time he would be penalized $25 a day by the state. That was simply a spontaneous, unrequested remark of Mr. Kernan's. The issue that is made in this pleading, Your Honor, on which testimony was offered both by Scott and by Mr. Kernan was on this question, that there was nineteen days lost time    *    *    *

The Court: There wasn't a single, solitary iota or scintilla of evidence showing a single copper lost by reason of that.

Mr. Lord: I beg to differ with Your Honor.

The Court: You may at your leisure take the transcript and read it through. I defy you to find it anywhere.

Mr. Lord: You misunderstood the testimony that was offered.

The Court: No I didn't.

Mr. Lord: There was testimony to the effect that the loss of the use of the machinery ran into a large sum of money, way in excess of $25 a day by the tieups that flowed from the loss of the use of that barge.

The Court: These silent speculations about a big loss are not evidence in a lawsuit of loss.

Mr. Lord: It certainly is evidence if they exceed the amount we prayed for.

The Court: It didn't show any amount at all.

Mr. Lord: It showed an amount in excess of $25 a day. He said 'The interest on a hundred thousand dollars of machinery'.

The Court: That isn't any amount.

Mr. Lord: I don't want to be contentious, Your Honor, on a point where I have full relief on sources of that character, but Your Honor stated to the jury that there was a $25 a day penalty that we had to pay to the state. We never claimed anything like that at all.

The Court: You will find it in the record when you have the transcript made.

Mr. Lord: I wish to except to Your Honor's remarks about the making of the transcript. I think that is uncalled for. Do you want me to take my exceptions now?

The Court: Just as soon as they go out.''

Immediately after the jury retired, counsel for defendants saved an exception in the following words:

''The defendants likewise wish to except to His Honor's comment in the discussion that ensued between counsel and the court relating to the instruction on this point, wherein the court stated that there was not one iota of evidence'', etc.

On pages 341 and 342 of said exhibit A, we find the following:

"The defendant likewise wishes to file an objection and exception to Your Honor's instructions wherein Your Honor instructed the jury that they should not consider any disbursements made by the defendants after the date of the termination of the contract with Mitchell when Drane was taken off of the job, in that it wholly ignores the defense or theory of the defense made by the defendants, it being the law that where a party has properly performed a contract and the contract is terminated by one of the wrongful acts of the other, then the other party may follow up the contract and perform it and charge it against the total earnings or amount payable under the contract upon proof that the amounts that were disbursed in the performance were reasonable."

From the foregoing excerpts of the record of exceptions taken, it is obvious that the attention of the trial court was drawn directly to the question herein involved at a time when there was an opportunity available to the court to make any desired correction in its instructions and hence the record justifies a consideration of the error assigned on appeal in that respect.

■ In regard to defendants' counterclaim based upon the relator's alleged snagging of Kernan's barge, we are unable to adopt plaintiff's construction of defendant's pleading. We think this pleading presents a counterclaim based upon alleged damage to Kernan caused by the enforced idleness of his machinery, equipment and working force for 19 days on account of the snagging of said barge.

The statement of defendants' counsel to the effect that no claim was being urged that any penalty or stip-

ulated damages had been paid by Kernan to the state on account of such idleness and the resultant delay in the performance of his contract is not inconsistent with our construction of defendants' pleading.

■ Upon the question of whether there is any evidence tending to support defendants' claim that defendant, Kernan, sustained damages by reason of the snagging of said barge, Mr. S. M. Scott, who was Kernan's superintendent, testified thus:

"Q. Had you outlined your work of laying this improvement somewhat dependent upon the transportation of the gravel? A. Yes, sir.

Q. Did you have any machinery or equipment there on this job? A. Yes, sir.

Q. Just state to the jury briefly what that was composed of.

A. It was composed of a dredger, a floating barge that done the unloading of this material from these scows onto hoppers. We had a hopper built to hold about eight or ten yards. We had caterpillars and trucks and men hauling filler dirt—binder—to put in this gravel. They had pits and caterpillars and trucks hauling that to fill in.

Q. What was the effect on all this outfit if you didn't get gravel?

A. Just the same as any job; if you only do fifty per cent of what you are supposed to do you are just out fifty per cent that is all. It is the difference between doing something and not doing it.

Q. Did it have any effect on the men at work as to what they received in wages, and so forth? A. Oh yes.

Q. What about your machinery?

A. Well, the same thing, the rental on this equipment and everything. You figure it will do so much work and if it does only fifty per cent, you are out fifty per cent."

Defendant Kernan testified:

"Mr. Lord: I will put it this way; what happened to one of your barges?

A. One of my barges was sunk with four hundred yards of rock on it and it cost me $2,800 to move it out, too.

Q. How long did it tie up your job?

A. It tied up my job for nineteen days; five days solid.

Q. What would be your loss on the job by way of lax use of your equipment and the general cost of overhead?

A. I had a twenty-five dollar a day penalty on the job and there was a hundred thousand dollars worth of machinery lying idle on account of not getting gravel.

Q. You have alleged that twenty-five dollars a day would be a reasonable sum on that item?

A. I just charged Mr. Mitchell the penalty which the state charged me.

Q. That is provided for in your contract? A. Yes, sir."

Moreover, it appears that at the time of this occurrence, Kernan had employees on that job who were paid straight time whether actually at work or not.

We think that this presents a question of fact as to whether the damages claimed or any part thereof were sustained by Kernan on account of the snagging aforesaid.

■ Section 4283, (U. S.) Rev. St. Title 46 U. S. Code, Ann., 109, is as follows:

*"Liability of Owner Not to Exceed Interest.* The liability of the owner of any vessel, for any embezzlement, loss, or destruction, by any person, of any property, goods, or merchandise, shipped or put on board

of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred without the privity, or knowledge of such owner or owners, shall in no case exceed the amount or value of the interest of such owner in such vessel, and her freight then pending."

F. E. Drane owned the. tug involved in the accident and Harold McHugh was operating it at the time. Drane had taken over the job of towing to finish it for the relator. After that arrangement had been made, Drane employed two tugs in the work. Drane operated one of them himself and McHugh operated the other under the direction of Drane.

Relator was neither the owner nor charterer pro hac vice of the tug involved in the accident. And for that reason plaintiff cannot take advantage of the provisions of the above section. *In re Reichert Towing Line,* 251 Fed. 214.

■ Section 3 of the Harter Act is as follows:

*"Limitation of Liability for Errors of Navigation, Dangers of the Sea and Acts of God.* If the owner of any vessel transporting merchandise or property to or from any port in the United States of America shall exercise due diligence to make the said vessel in all respects seaworthy and properly manned, equipped, and supplied, neither the vessel, her owner or owners, agent, or charterers, shall become or be held responsible for damage or loss resulting from faults or errors in navigation or in the management of said vessel nor shall the vessel, her owner or owners, charterers, agent, or master be held liable for losses arising from dangers of the sea or other navigable waters, acts of God, or public enemies, or the inherent .defect, quality, or vice of the thing carried, or from insufficiency of package, or seizure under legal process, or for loss re-

sulting from any act or omission of the shipper or owner of the goods, his agent or representative, or from saving or attempting to save life or property at sea, or from any deviation in rendering such service". 27 (U. S.) Stat. 445, chap. 105, § 3. (Sec. 192 of Title 46, U. S. Code Ann.)

This section does not exempt the owner of a tug operating under a contract of towage, as distinguished from one of affreightment, from liability for loss of the cargo of a barge through negligent towage although such owner was also the owner pro hac vice of the barge and was in fact the carrier of her cargo. *Baltimore & Boston Barge Co. v. Eastern Coal Co., et al.*, 195 Fed. 483. *The Coastwise*, 233 Fed. 1.

By parity of reasoning we conclude that it does not exempt the owner of the tug from liability for loss caused by damage to the barge through such negligent towage.

We are not unmindful of the doctrine which renders those provisions applicable to cases wherein towage is performed pursuant to a contract of affreightment with a common carrier. *Sacramento Nav. Co. v. Salz*, 273 U. S. 326 (47 Sup. Ct. 368, 71 L. Ed. 663).

In a comparatively recent case, one of the reasons assigned for holding that the owner of barges could not claim freedom from liability under the above section on the ground that loss was due to negligent management or navigation by a tug, is that the Harter Act does not apply to private carriers. *Tice Towing Line v. James McWilliams Blue Line, et al.*, 51 Fed. (2d) 243. The same reason would be equally applicable to the claim of freedom from such liability by the owner of the tug.

■ Besides, the record convinces us that neither the place on the Coquille river where Kernan's barges were loaded with gravel nor the place where such barges were unloaded is a port within the meaning of the section of the federal statute above quoted. In other words, the relator was not transporting merchandise or property to or from any port in the United States. In law, a port is a place for arriving and lading and unlading of ships in a manner prescribed by law, and near to which is a city or town for the accommodation of marine and the securing and vending of their merchandise. 49 C. J. 1085.

It follows that the provisions of said section 3 of the Harter Act are not applicable to the facts in the instant case.

■ With respect to plaintiff's contention, that inasmuch as defendants allege that on October 3, 1930, defendant Kernan terminated the contract, defendants are not entitled to urge as a counterclaim any expense or damage occurring thereafter, we think that the termination available to a party to a contract by reason of the breach thereof by the other party is one which merely puts an end thereto for all purposes of performance, but does not affect the right of one who has partly performed in a way substantially beneficial to the other to recover for such partial performance; nor does it affect the right of the other to counterclaim for damages sustained by the breach of said contract on the part of the one claiming recovery by reason of such partial performance.

In the case of *Kauffman v. Raeder,* 108 Fed. 171 (47 C. C. A. 278, 54 L. R. A. 247), Mr. Justice Sanborn, speaking upon these questions, says:

"It is only when the parties to the agreement can be placed in statu quo that one may rescind or repudiate the entire contract for the failure of the other to perform it. When one party has received the benefits of substantial performance by the other without paying for them the price agreed on, and he cannot or does not return these benefits, it is manifestly unjust to permit him to retain them without paying or doing as he promised to pay or do on account of his receipt of them. In order to avoid such an injustice the party who has substantially performed may enforce specific performance of the covenants of the other party, or may recover damages for their breach, without plea or proof of complete performance, while the defendant, on the other hand, may recover by counterclaim or by an independent action the damages which he has sustained from the plaintiff's failure to completely fulfill his covenants."

■ As stated at the outset, two questions are here presented, namely: May recovery be had for the partial performance of a contract where the other party thereto has received and retains benefits by reason of such partial performance? And may counterclaims be interposed based upon damages sustained by reason of the relator's failure fully to complete the contract? Both of these questions must be answered in the affirmative.

We quote an excerpt from an opinion rendered by the late Mr. Justice Burnett:

"So far as the first cause of action is concerned, the plaintiff is entitled to recover for what he did under the contract, of value to the defendant, although he did not comply with the contract in some respects, short of willful abandonment: Tribou v. Strowbridge, 7 Or. 156; Steeples v. Newton, 7 Or. 110 (33 Am. Rep. 705); Todd v. Huntington, 13 Or. 9, (4 Pac. 295); Gove v. Island City M. & M. Co., 19 Or. 363 (24 Pac. 521);

Murray's Estate, 56 Or. 132 (107 Pac. 19); West v. McDonald, 64 Or. 203 (127 Pac. 784); Wuchter v. Fitzgerald, 83 Or. 672 (163 Pac. 819); Easton v. Quackenbush, 86 Or. 374 (168 Pac. 631). Of course, this rule as to the recovery of what the plaintiff did that was of value to the defendant is qualified by the principle that the latter is entitled to counterclaim for damages which it suffered by reason of any breach of the contract by the plaintiff.'' Rose v. U. S. Lumber & Box Co., 108 Or. 237, 246, 247 (215 Pac. 171).

We think that the determination of the rights of defendants to prevail upon their alleged counterclaims, which the trial court withdrew, should have been left with the jury.

■ The character of the claims and state of the record are such that we think that a jury and not this court should pass upon defendants' counterclaims and the other questions of fact necessary to be decided upon a retrial hereof.

The judgment of the circuit court is reversed and the cause remanded for such further proceedings as may not be inconsistent herewith.

RAND, C. J., BAILEY and BELT, JJ., concur.