Argued October 4, reversed October 24, petition for rehearing
denied December 5, 1950

## BUCKMAN *v.* HILL MILITARY ACADEMY,

A CORPORATION

223 P. (2d) 172

*John C. Veatch, II*, argued the cause for appellant. On the brief were Veatch & Bradshaw, of Portland.

*Robert G. Clostermann*, of Portland, argued the cause and filed a brief for respondent.

Before LUSK, Chief Justice, and ROSSMAN, HAY, LATOURETTE and WARNER, Justices.

LATOURETTE, J.

Plaintiff was decreed a judgment in the amount of $4530.00 in the lower court against defendant based on a promissory note and an extension agreement between the parties. The note was dated October 8, 1929, and was in the principal sum of $14,000.00, payable five years after date and bearing six per cent interest per annum. On June 10, 1935, the parties entered into an agreement which was set out verbatim in the former appeal in this case found in 182 Or. 621, 189 P. (2d) 575. By the terms of that agreement, defendant paid to plaintiff $420.00 cash and agreed to make a further payment of $1,680.00 prior to September 10, 1935, and further agreed to pay on the principal of said note beginning September 1, 1935, $175.00 at the end of each three-months' period thereafter. Plaintiff agreed to reduce the rate of interest for a specified time and agreed to release nine lots held as security. It was further agreed as follows: "The undersigned further agrees that for each $300.00 paid and interest *as above provided,* to release one additional lot." (Italics ours). It was further agreed that the mortgage securing said note "shall remain in full force." It was further agreed that all payments made on the note and

contract were to be paid directly to "General Discount & Mtg Co of Seattle, c/o Lloyd Holtz 1124 Vance Bldg. Seattle, Wash."

Defendant answered the complaint by admitting the execution of the note and contract and by pleading a separate defense, setting up, among other things, that it made the payments in accordance with the terms of the agreement, and that on May 10, 1938, it made a payment to the plaintiff in the sum of $350.00, and thereupon demanded of plaintiff the release of an additional lot in accordance with their agreement. It is. then alleged:

"That the plaintiff failed, neglected and refused to release any more lots on account of payments in accordance with the terms of said agreement, and said agreement was abandoned and cancelled by the mutual consent of both parties thereto on or about the 17th day of June, 1938."

Plaintiff, in her reply, denied each and every allegation set up in the further answer and defense.

Plaintiff's complaint was filed in August, 1944. The trial court, at the first hearing, found for defendant after plaintiff had rested her case. On appeal, this court reversed the lower court and remanded the case for further proceedings, holding that plaintiff had made out a prima facie case, and said:

"* * * the obligation to release portions of the security was a condition subsequent annexed to prior payment of certain sums upon the note. Proof of the happening of a condition subsequent defeating the cause of action is a defensive matter, as to which defendant has the burden of proof."

Throughout the entire proceedings, this case has been treated and considered as a suit in equity and was so considered by this court on the former appeal.

■ The first assignment of error is as follows: "The court erred in entering judgment on a cause of action barred by the statute of limitations." Since defendant did not raise the statute of limitations by answer, and the complaint, on its face, stated facts sufficient to take it out of the statute, defendant will not be permitted to avail itself of the statute. Section 1-201, O. C. L. A.

The second assignment of error is that the court erred in entering judgment on the contract in favor of the plaintiff when she was in default in the perform-ance of the contract.

To properly understand this assignment, we will review the transactions of the parties. Plaintiff was the owner of a certain tract of land in Multnomah county and conveyed it to defendant; whereupon, coincident with the transfer, defendant executed and delivered to plaintiff the purchase price promissory note in question and a mortgage covering the real property involved. The mortgage provided that defendant contemplated platting the land into city lots, and that upon the sale of any lots so platted, the plaintiff would release from the lien of the mortgage any such lot so sold upon the payment of $300.00 on the principal and all interest then due and owing upon the note.

On the 6th day of November, 1929, the defendant deeded to the Title and Trust Company, an Oregon corporation, the property involved in trust for plaintiff and defendant et al; whereupon, the Title and Trust Company issued to the parties a trust certificate which was agreed to in writing by the parties hereto. The mortgage theretofore given by defendant to plaintiff was satisfied of record pursuant to such trust agreement. It was further provided in the trust agreement that upon the sale of any lot, and the payment of

$750.00 to the trustee, the trustee would convey such lot to the purchaser and would thereupon turn over to the plaintiff the sum of $300.00, disbursing the balance as called for in the trust certificate. It was further provided in the trust agreement that the aforesaid note should be paid in full on or before five years from date.

It will be noted that the contract of June 10, 1935, to which the trust company was not a party, varied considerably from the terms of the trust agreement.

Defendant, at the trial, produced uncontradicted evidence that up to May 10, 1938, it had made all of the payments required of it to be made under the agreement and had obtained releases for all lots theretofore sold by it, excepting the release of Lot 34, Block 8, Academy Heights, which had been sold and for which, on that date, the defendant had paid $350.00.

That these payments were made is borne out by the plaintiff's admission in her brief that on September 1, 1935, there was a balance due on the principal of $6,650.00, and that on May 10, 1938, the date on which defendant made its last payment, there was still a principal balance due of $4,530.00. Under the contract, defendant was obligated to pay $175.00 on the principal each quarter, which would be $700.00 per annum. The time elapsed between such dates was two years and nine months so that defendant was required to pay during that time under such agreement $2,065.00, whereas, in fact, it paid $2,120.00, an overpayment of $55.00.

The real issue between the parties is whether or not defendant was obligated to pay $300.00 over and above the $175.00 per quarter on the principal in order to get a release of any particular lot. This requires, therefore, a construction of the contract involved. It

calls for the payment of $175.00 per quarter on the principal and then recites: "The undersigned further agrees that for each $300.00 paid and interest *as above provided,* to release one additional lot." (Italics ours) "As above provided" obviously refers to the $175.00 principal payment each quarter.

■ The mortgage, which, by said contract, was to remain in full force and bind the parties accordingly, recited that the "second party will release from the lien of this mortgage any such lot so sold upon the payment of Three Hundred Dollars, and all interest that may be due and payable on said note at the time said release is demanded." Since the original note was not an installment note but was due and payable five years after date, the release clause in the mortgage fortifies the construction that the defendant was entitled to a release of a lot upon the payment of $300.00 on the principal and not in addition to the $175.00 payment per quarter.

That the parties themselves so construed the contract is evidenced by the fact that lots were released upon sales made periodically during the years in question upon defendant's paying $2,120.00, which equalled the $175.00 per quarter as above stated. It is clear that defendant kept up his interest payments during that period since in the complaint plaintiff claimed interest from May 10, 1938. We find, therefore, that defendant, up to and including May 10, 1938, made all payments required of it under the contract. Plaintiff thereupon became obligated under the contract to release the lot in question. It is uncontradicted that this she failed to do, although request was made by defendant for such release on several occasions.

Since the contract was breached by plaintiff, we

now approach the legal question involved to determine the rights of the parties. Plaintiff, in her brief, answers this for us. We quote:

"If the promises are independent of each other, a party must perform his part of the contract when the time for performance has arrived; irrespective of whether the other party has performed his obligation; if, however, the promise of one is dependent upon performance by the other, the former need not perform unless the other has performed or has at least offered to perform his part of the contract.

"12 Am. Jur., Contracts, Section 327.

'It has been said that a party first guilty of a breach cannot complain if the other party thereafter refuses to perform.'

'Similarly, it has been said that the party who commits the first breach of a contract cannot maintain an action against the other for a subsequent failure to perform.'

'It has also been said that where a contract is not performed, the party who is guilty of the first breach is generally the one upon whom rests all the liability for nonperformance.'

"12 Am. Jur., Contracts, Section 338.

'A condition subsequent of a contract is one which follows the performance of the contract and operates to defeat or annul it upon the subsequent failure of either party to comply with the condition.'

"Northwestern Life Ins. Co. v. Ward, 56 Okla. 188.

'Equity will not aid a contracting party who has not performed his own obligations under the contract.'

"Baltimore Trust Co. v. Norton Coal Mining Co., 25 F. Supp. 968.

'A party to a contract cannot have benefit of its provisions which are favorable to him and

ignore its conditions which are to be performed by him.'

"Farmers & Merchants Bank v. Boland, 175 S. W. (2d) 939."

■ Where there is an essential part of a contract that one party shall perform certain acts which are requisite to enable the other party to carry out his part of the agreement, a repudiation of the agreement on the part of the former party, such as failure to perform without warrant by existing conditions, absolves the other party from complying with his part of the contract and gives him the right to rescind. *Starvaggi v. Ludden*, 116 Or. 119, 240 P. 432. See 17 C. J. S., Contracts, § 429, p. 912; 12 Am. Jur., Contracts, § 442, p. 1024.

■ It was an essential part of the contract in question that plaintiff release the lots from the operation of the security upon the payment by the defendant of $300.00. It is clear that defendant purchased the property in question and platted the same for the purpose of making sales. It could only make sales if a release of the lots, when sold, was effectuated. This went to the very heart of the contract, and when plaintiff refused to release the lot in question, plaintiff breached the contract and defeated her cause of action.

This being a suit in equity, equity will not aid plaintiff on account of her nonperformance of her obligations under the contract. *Baltimore Trust Co. v. Norton Coal Mining Co.*, supra. See 4 A. L. R. 73. The decree of the lower court will be reversed and the cause dismissed.