Argued September 12, affirmed October 11, 1973

WASSERBURGER, *Appellant, v.* AMERICAN
SCIENTIFIC CHEMICAL, INC. ET AL,
*Respondents.*
514 P2d 1097

*Frank A. Moscato,* Portland, argued the cause for appellant. On the brief were Hanna & Purcella and Roger G. Weidner, Portland.

*Frederick T. Smith,* Portland, argued the cause for respondents. With him on the brief were Dusenbery, Martin, Bischoff & Templeton, Portland.

TONGUE, J.

This is an action on an oral contract to recover allegedly unpaid sales commissions. The case was tried before the court, without a jury. Plaintiff appeals from a judgment for defendant. We affirm.

One of plaintiff's two assignments of error is that:

"The trial court erred in holding that plaintiff's right to commissions under the contract ceased the moment plaintiff discussed with United the possibility of United buying their medical laboratory supplies from a different supplier."

■ This attempted assignment of error clearly fails to conform to the requirements of Rule 2.35 of our Rules of Procedure. We shall consider it, however, because the question raised controls the disposition of this case on its merits.

The findings of fact by the trial court included the following:

"2. The contract was terminated by the plaintiff's attempt to sell goods for a competitor of the defendant American Scientific Chemical, Inc.

"3. That the defendant American Scientific Chemical, Inc. performed its contract in all respects until the plaintiff acted in a manner which defeated further performance of the contract by attempting to represent a competitor of the defendant; * * *."

The question to be decided is whether these findings are supported by substantial evidence and, if so, whether it follows that plaintiff is barred from re-

covery of commissions allegedly earned by him prior to such a termination of the contract.

In November 1968, plaintiff and defendant entered into an oral contract under which plaintiff was to be paid by defendant 50 per cent of the net profits earned by defendant from sales of certain medical laboratory supplies sold by it to United Medical Laboratories, which plaintiff had obtained as a customer for the purchase of such goods.[1]

The first order placed by United with defendant was shipped in December 1968. Payment was received by defendant in January 1969, from which defendant then paid the commission due to plaintiff. According to plaintiff, the payment of his commission on the next order should have been paid at the time of shipment, but was late. Plaintiff admitted, however, that it was then agreed that commission payments would be made to plaintiff as and when defendant received payments from United, even though such payments were not received for from 60 to 90 days after shipments were made.

The next commission payment to plaintiff was made in April 1969, the reason for the delay being the "pay period lapse" in receiving payment by defendant from United. No further payment was made until July, both because of United's "paying practices" and also because of a disagreement between the parties during that period over plaintiff's responsibility to contact and develop further accounts in Oregon, Washington and Northern California.

---

[1] The complaint also names Earl F. Bates, president of American Scientific Chemical, Inc., as an additional defendant. For the purposes of this opinion, however, that corporation will be treated as the sole defendant.

It appears that plaintiff had not made such an effort to develop further accounts and that even later he secured only one such order—an order from a hospital in July 1969. Plaintiff denied that there had been any agreement that he would make any such effort. There was substantial evidence, however, that plaintiff had originally agreed to do so. In addition, there was testimony that defendant had not previously handled these items; that it was not profitable for defendant to sell these items to United alone, and that defendant offered to pay the "back commissions" to plaintiff if he would get out and try to sell these laboratory supplies to other purchasers, as originally agreed.

Plaintiff admitted this matter had been originally "discussed." He also admitted that he was told by defendant that the reason for withholding further commission payments was his failure to make an effort to develop further accounts.

In May 1969, plaintiff went to work as a salesman for another employer. He then called on the United purchasing agent and made an effort to persuade him to purchase from his new employer the same laboratory supplies that United had been purchasing from defendant.

In May 1969, the United purchasing agent reported this to defendant, which then wrote a letter to plaintiff terminating the agreement. In August, however, at the request of the United purchasing agent, defendant paid commissions owing to plaintiff through May 1969, but refused to pay him any further commissions. United continued, however, to purchase laboratory supplies from defendant for some time before it finally terminated such purchases.

Plaintiff then filed this action. Plaintiff's com-

plaint alleges that the parties made an "oral contract" under which plaintiff was to "procure purchasers. for merchandise sold by the defendants" and be paid as "a sales commission, an amount equal to fifty percent (50%) of the gross profit realized on the sales made by the plaintiff"; that plaintiff sold certain laboratory supplies to United on which there was an unpaid balance of such commissions due and owing to plaintiff in the sum of $6,100.02, "which defendants refuse to pay or any part thereof."

■ It is well established, at least as a general rule, that a plaintiff who seeks to recover under the terms of an express contract for defendant's failure to perform its terms must plead and prove his own substantial performance or a valid excuse for his failure to perform. *Lamb-Weston et al v. Ore. Auto Ins. Co.,* 219 Or 110, 116, 341 P2d 110, 346 P2d 643 (1959); *Turner v. Jackson,* 139 Or 539, 548, 4 P2d 925, 11 P2d 1048 (1932); *Lewis v. Siegman,* 135 Or 660, 664, 296 P 51, 297 P 1118 (1931). See also ORS 16.480.

■■ It is also well established, at least as a general rule, that a breach or nonperformance of a promise by one party to a bilateral contract so material as to justify a refusal of the other party to perform a contractual duty, discharges that duty. 2 Restatement, Contracts 750, § 397. *Prime v. Prime,* 172 Or 34, 61, 139 P2d 550 (1943); *Buckman v. Hill Military Academy,* 190 Or 194, 201, 223 P2d 172 (1950); and *Mohr v. Lear,* 239 Or 41, 48-49, 395 P2d 117 (1964). Whether a breach is so material as to have such a result is ordinarily a question of fact. See 1 Restatement, Contracts 402, § 275.

Plaintiff contends that "there was a full performance on his part under the terms of the agreement

and that he was justified in discussing with United the possibility of buying from a source other than [defendant] because [defendant] was not paying him in a timely manner."

■ In this case, however, and wholly aside from the sufficiency of plaintiff's complaint, the evidence was overwhelming to the effect that there was not a substantial performance of this contract by the plaintiff, but that, on the contrary, there was a material breach, if not a willful breach, of the contract by him. Plaintiff not only failed to substantially perform that part of the agreement under which he was required to contact and develop accounts elsewhere in Oregon, Washington and Northern California, but his attempt to persuade United to purchase from his new employer the same kinds of laboratory supplies which were the subject of his oral agreement with defendant was clearly a material, if not also a willful breach of the contract. There was no evidence sufficient to constitute a valid excuse for such flagrant misconduct.[2]

In *Perkins v. Standard Oil Co.*, 235 Or 7, 16, 383 P2d 107, 383 P2d 1002 (1963), this court quoted with approval from 3 Corbin, Contracts 278 n.2, § 561, as follows:

" 'In every contract there is an implied covenant that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract, which means that in every contract there exists a covenant of good faith and fair dealing.' "

---

[2] Plaintiff does not contend that any agreement to solicit additional accounts was severable or independent from the agreement to pay commissions on sales to United, but denies that there was any agreement to solicit additional accounts. We hold, however, that there was substantial evidence that there was such an agreement and that it was not a severable agreement or one involving independent covenants.

It follows that there was substantial evidence to support the finding that "plaintiff acted in a manner which defeated further performance" of the contract, thus constituting a breach so material as to justify a refusal by defendant to continue performance. It also follows that plaintiff failed by his proof to establish either substantial performance by him or a valid excuse for his failure to perform.

Plaintiff also contends, however, that defendant "cannot rely on such nonperformance to excuse its own nonperformance of nonpayment"; that defendant "continued to reap the benefits from its dealings with United which were \* \* \* an outgrowth of plaintiff's efforts," in excess of any injury suffered by them, with the result that defendant was "under a quasi-contractual duty to pay that excess," citing 2 Restatement, Contracts 623, § 357, and 3A Corbin, Contracts 308-11, § 700. See also 3A Corbin, Contracts 334, § 709.

■ It is true that in a long line of cases arising under personal service and construction contracts, beginning in *Steeples v. Newton,* 7 Or 110, 113-14 (1879), we have held that a plaintiff who has failed to complete the performance of a contract may nevertheless recover in quasi-contract or quantum meruit for the reasonable value of the work performed or material furnished, provided that his breach or abandonment of the contract was not willful. See *Trachsel v. Barney,* 264 Or 29, 33, 503 P2d 696 (1972). See also *Gove v. Island City M. & M. Co.,* 19 Or 363, 368-69, 24 P 521 (1890), and *State v. U.S. Fidelity Co.,* 144 Or 535, 548-50, 24 P2d 1037 (1933). Cf. *Feldschau v. Clatsop County,* 105 Or 237, 241, 208 P 764 (1922) ; 3A Corbin, Contracts 328, § 707; and 6 Corbin, Contracts 17, § 1254.

■ In this case there was substantial evidence to

support a finding of fact that the breach by plaintiff was willful. The trial court, however, did not make such a finding, apparently because plaintiff made no contention in the trial court that he was entitled to recovery on a theory of quasi-contract or quantum meruit, but relied solely upon a theory of express contract, as pleaded in his complaint. Also, no evidence was offered from which the trial court could find the amount of any benefit accruing to defendant in excess of any damages suffered by it as a result of plaintiff's breach of contract, as now contended for by plaintiff.

Under these circumstances and this new theory of recovery having been raised for the first time on appeal, it would be improper for us either to consider that theory on appeal or to remand this case to the trial court for further proceedings and further findings.

For these reasons we affirm the holding by the trial court that plaintiff did not establish his right to recovery in that court. It thus becomes unnecessary to consider plaintiff's second assignment of error in which he contends that the trial court erred in finding, as an alternative basis for its decision, that the oral agreement in this case was invalid under the Statute of Frauds (ORS 41.580).

Affirmed.

McALLISTER, J., concurring.

This is another case in which the appellant in an action at law tried by the court without a jury seeks to obtain a retrial of the facts by broadly criticizing the trial court's findings of fact instead of alleging precise assignments of error as required by our rules. *Hekker*

*v. Sabre ·Construction Co.,* 265 Or 552, 510 P2d 347 (1973): The scope of our review in this case is accurately stated in *Wagner v. Savage, as Adm'r,* 195 Or 128, 141, 244 P2d 161 (1952) as follows:

> "This being a law action, the findings of the trial court upon the facts have all the force and effect of a verdict of a jury, and this court is bound thereby if there is any substantial evidence in the record to support them. We are not permitted to weigh the evidence and arrive at our own independent conclusions respecting the facts, as is the case in equity proceedings which are here tried de novo. * * *"

See, also, *Brandt v. Premier Insurance Co.,* 260 Or 392, 490 P2d 984 (1971); *Cronn v. Fisher,* 245 Or 407, 422 P2d 276 (1966).

The majority opinion points out that "the evidence was overwhelming to the effect that there was not a substantial performance of this contract by the plaintiff, but that, on the contrary, there was a material breach, if not a willful breach, of the contract by him." This is a clear finding that there was substantial evidence in the record to support the findings of the trial court. Instead of ending its consideration of the case at that point the majority is induced by the tactics of the appellant to retry the facts de novo. I decline to join in that procedure.

I concur in the result.