Argued and submitted September 18, 1984, affirmed May 1, 1985

JOHNSON et ux,
*Respondents,*

*v.*

JEPPE et ux,
*Appellants.*

(27791; CA A31035)

698 P2d 1020

William J. Storie, Pendleton, argued the cause and filed the brief for appellants.

Steven J. Pierce, Ontario, argued the cause and filed the brief for respondents.

Before Joseph, Chief Judge, and Warden and Newman, Judges.

WARDEN, J.

## WARDEN, J.

Defendants appeal from a judgment entered after the trial court had allowed plaintiffs' motions for directed verdicts on their claim for sums due under a contract and on defendants' counterclaim for damages for fraud. We review the facts in the light most favorable to defendants, *Miller v. Harder,* 240 Or 418, 402 P2d 84 (1965); *Coy v. Starling,* 53 Or App 76, 78, 630 P2d 1323, *rev den* 291 Or 662 (1981), and affirm.

Plaintiffs owned and operated a business under the assumed name of Blue Mountain Distributing, which held the exclusive right to distribute "Tom's Food Products" through vending machines in an area in northeastern Oregon and also sold food products from several other suppliers. The parties began discussions for the sale of the business in November, 1981. Plaintiffs provided defendants with a financial statement of the business for the period ending July 31, 1981, and a summary of that financial statement. The financial statement contained a breakdown of income from "sales" and "commission vending sales" of $26,026.95 and $78,377.37, respectively.

On March 8, 1982, the parties entered into a contract for the sale of plaintiffs' interest in Blue Mountain to defendants for $166,572.50. The contract provided for payment of $30,000 on execution of the agreement, $7,000 on March 22, 1982, additional periodic payments totalling $31,055, commencing in September, 1982, and defendants' assumption of certain of plaintiffs' business obligations: $93,622.50 for the purchase of vending machines and $4,895 for the purchase of a 1979 GMC van. Plaintiffs warranted that "[t]here are no warrants, option rights or debentures presently outstanding." The contract is otherwise silent as to the existence of or assumption of other liabilities. The contract contains a provision allowing plaintiffs to accelerate the obligation to pay the balance in the event of a default by defendants after the giving of a 30-day notice, as well as a provision that defendants were accepting the contract on the basis of their own examination of the business and not in reliance on the opinion of the sellers. The contract also contained an integration clause.

Defendants failed to pay the $7,000 due on March 22. On July 16, plaintiffs' attorney sent defendants a letter declaring that plaintiffs were accelerating the obligation and

demanding payment of the $7,000 and the $31,055 balance within 10 days. Those amounts were not paid, and plaintiffs commenced this action on August 23, 1982. Defendants' answer asserted two counterclaims. The first alleged that plaintiffs had falsely represented the income of the business and claimed damages for fraud; the second alleged that plaintiffs had breached the contract by failing to pay certain accounts payable of the business and sought damages for sums paid to various creditors by defendants. Defendants did not seek to rescind the contract.

At the close of the evidence, plaintiffs moved for directed verdicts on their claim and against defendants' counterclaim. Except as related to the acceleration provision, the trial court orally allowed the motions:

"The plaintiffs moved for a directed verdict on their complaint and asked that the entire balance prayed for in the complaint be awarded them by order of the Court and that the matter not be submitted to the jury.

"My ruling on that matter is that the acceleration clause provided in the contract was not properly exercised in this case.

"On page 5 of the contract, it provides, 'If buyers shall fail to perform any of the terms of this contract, the time of payment and performance being of the essence, seller shall at seller's option, subject to the requirement of 30-days written notice, have the following rights.' * * * [Plaintiffs'] letter in July of 1982 accelerated the payments immediately upon the writing of the letter. * * * The opportunity was not extended to the purchasers to bring those—the contract current within 30 days. Therefore, the letter was a nullity.

"* * * * *

"So, with this type of a clause in the contract, my ruling is that * * * the acceleration clause was never properly involved and consequently, the plaintiffs are not entitled to acceleration under the contract.

"To go on, my ruling is further that the defendants—or that the plaintiffs are entitled to all payments due by the terms of that contract and that they are entitled to a directed verdict in that regard. The defendants are asking that their contract be affirmed. They're asking that the contract be enforced. They want some damages for some fraud and they want some damages for some accounts payable, but they're

asking that the contract be enforced and that it be followed and consequently, the plaintiffs are entitled to all payments due under the contract, together with interest as provided for under that contract and it's my ruling that there's not a jury issue on that matter and a directed verdict will be entered accordingly. * * * So, plaintiffs will be allowed a directed verdict to that extent.

"To go on, there—an issue has been presented on the question of whether or not plaintiffs are entitled to a directed verdict on the first counter-claim filed by the defendants and the first counter-claim filed by the defendants is for fraud. The fraud is for falsely stating the income of the business known as Tom's Food Products. That's the extent of the fraud that is alleged in the complaint.

"There must be evidence from which a—the jury could find by clear and convincing evidence that this alleged fraud took place. The defendant says that this evidence consists primarily of falsely stating income showing all of Tom's Food Products' income when the sale only included the vending machine business. Mr. Jeppe—Mr. Jeppe testified to this and the question then would be whether or not his testimony is sufficient to present a jury question on this issue.

"My ruling is that it is not and the reason for my ruling is that paragraph I of the contract does not limit the sale of the business to the vending machine business, but instead says, 'The seller hereby agrees to sell, assign, transfer, and to set over to buyers all of their right, title—all of their right, title, and interest in Tom's Food Products.' That would indicate clearly, without dispute, that the interest was of all aspects of Tom's Food Products that was conveyed by the sellers to the buyers. So, the contract was clear on this point.

"Mr. Jeppe testified that prior to the sale, he had in his hands Exhibit 13. This goes to August and it shows—It's a printout of the—from the accounts of the business of Tom's Food Products. Right on the first page, there's a breakdown on sales and it says, 'Commission From Vending Sales, $78,377,' and then it's got 'Other Sales, $26,026,' for a total of $104,000. It is evident from the first page, first paragraph of this account, that there are in—there are receipts from the vending sales and there are receipts from other sales. It's hard to argue then that the defendants were unaware that there were other sales.

"Furthermore, if you look at the checks that were written and they're clearly delineated. They've got checks in here to other businesses beyond the vending machine business. The

vending machine business was primarily a snack food business, but there are substantial checks to, for example, United Grocery, to Coca Cola and beer and wine distributors, all of which I feel clearly would put the purchasers on notice of sales in addition to the vending machine sales.

"Also, there's no evidence really that the sellers made any false statements or provided false information. The only indication is that maybe they didn't tell them everything and that isn't sufficient especially with the information that was provided.

"Furthermore, there's been no showing that even if we accept the plaintiffs' position that they didn't know that the $182,000 in gross income from '82 constituted a substantial amount of over-the-counter sales, there's no showing that that difference in gross income was material. What would be material, would be net income or profits from the business. It doesn't make any difference what the gross receipts are of the business. What makes the difference is the—the net receipts of the business and there's been no showing that there's been any loss of profits as a result of losing two over-the-counter sales to two remote grocery stores in Palmer Junction and Starkey and that that loss of those business actually effected *[sic]* the net operating income of the business. No testimony at all about that. The only testimony really, related to gross receipts and that's not sufficient.

"Furthermore, there's been no showing of any right to rely on the information. As I already indicated, there was *[sic]* the sources of the income and the expenses were substantially delineated in Exhibit 13 which the purchasers had prior to the sale and that was not investigated. The information provided in Exhibit 13 was not investigated.

"This was an at arm's length transaction and the defendants, purchasers, were given full opportunity of investigation and one cannot overlook the clause in the contract that they provide—that they signed which says in part on page 4, 'Buyers certify that this agreement is accepted and executed on the basis of their own examination and personal knowledge of the business conducted by sellers, an opinion of the value thereof, that no attempt has been made to influence their judgment, that no representation as to the condition of said business has been made by sellers or by any agents of sellers, that they have had access to and examined the business and financial records of the business.' This clause was in the contract; the contract was signed. It would not admittedly protect the seller of a business from engaging in active fraud.

> There's been absolutely no showing of that in this particular case and under all of the circumstances just indicated, that my ruling is that the plaintiffs are in fact entitled to a directed verdict on the fraud claim."

In regard to the motion for a directed verdict on plaintiffs' claim, defendants posit that a plaintiff who seeks to recover under the terms of an express contract must plead and prove his own substantial performance. *See Wasserberger v. Amer. Sci. Chem.*, 267 Or 77, 82, 514 P2d 1097 (1973). They argue that the directed verdict was improperly granted because, under the terms of the contract, plaintiffs agreed to be responsible for all accounts payable and there remained a fact question whether plaintiffs fully performed that obligation.

Whether a breach of a promise by one party to a bilateral contract is so material as to justify a refusal of the other party to perform a contractual duty is ordinarily a question of fact. *Wasserburger v. Amer. Sci. Chem., supra,* 267 Or at 82. Correspondingly, on a motion for a directed verdict the function of the trial court is not to weigh the evidence, but to determine whether the jury could reasonably find for the defendant from the evidence presented. *Coy v. Starling, supra,* 53 Or App at 80. After reviewing the record, we agree with the trial court's conclusion that the evidence presented did not create a jury question.

Although defendants argue that plaintiffs' payment of all of the bills of Blue Mountain was a part of the contract, they point to no provision in the contract that conditions their obligation to pay the purchase price for the business on plaintiffs' payment of any liabilities. The only provision that possibly could be construed to have that effect is the recitation that "there are no warrants, option rights or debentures presently outstanding." Defendants, however, do not argue that any of those terms is so ambiguous as to present a question of fact for resolution by the jury. *See Ross Bros. Const. v. Trans. Comm.*, 59 Or App 374, 650 P2d 1080 (1982). Accepting the meaning of those terms as expressed by the parties in the trial court, we find the evidence insufficient to present a jury question. Although there is evidence that the parties may have entered into a collateral agreement regarding plaintiffs' payment of specified debts, the terms of that

agreement were not incorporated into the final instrument, and there is no evidence that the contract for the sale of the business was conditioned on performance of that agreement.[1] The court cannot insert by construction a condition that the parties have, albeit negligently, omitted. From the evidence presented, the jury could not reasonably have found for defendants on the basis of plaintiffs' nonperformance of a contractual obligation.

■       Defendants also contend that the motion for a directed verdict on plaintiffs' claim was erroneously allowed, because there was no evidence that notice of acceleration of the balance was given in compliance with the contract and, therefore, whether plaintiffs properly gave notice was a question of fact for the jury. We agree that there was no evidence of proper notice but, inasmuch as the trial court denied that part of plaintiffs' motion, resolved that issue in favor of defendants and gave judgment only for sums accrued to the time of the trial, we are at a loss to understand defendants' position. We conclude, however, that no cognizable error has occurred.

Defendants also assign error to the trial court's granting of plaintiffs' motion for a directed verdict against them on their counterclaim for fraud, based on alleged false representations of the value of the business. The crux of defendants' argument is that plaintiffs led them to believe that Blue Mountain was exclusively a vending machine business, that plaintiffs concealed the fact that part of the gross income of the business was generated from stocking store shelves and that, had the gross receipts been solely from vending machines, the net income of the business (and therefore its value) would have been greater than defendants subsequently found it to be. Defendants claim that, in reliance on misleading information provided by plaintiffs, they contracted to pay $72,950 more than the actual value of the business.

■       The test for actionable fraud is stated in *Webb v. Clark,* 274 Or 387, 391, 546 P2d 1078 (1976):

---

[1] Defendants' second counterclaim claimed amounts due for accounts payable of Blue Mountain that were incurred by plaintiffs but paid by defendants. That counterclaim, which apparently relates to the collateral agreement, was settled by stipulation at the close of the evidence and is not an issue in this appeal.

"In order to establish actionable fraud, the plaintiff must plead and prove the following elements:

" '(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury.'

"If any one of these elements is not established by clear and convincing evidence, plaintiff's case must fail." (Citations omitted.)

Using those criteria, we conclude that the evidence was insufficient to submit the question of fraud to the jury. The contract contains an integration clause to the effect that defendants did not rely on any representations of plaintiffs as to the value of the business, and defendants acknowledge that they based their offer on the financial records that plaintiffs provided for their review before the contract was signed. There is no evidence that any information in those records was inaccurate. Defendants' argument that, because they thought that they were buying only a vending machine business and therefore were entitled to rely on the income stated on the financial statement as being from vending machine sales only, is not enough to warrant our holding that there was a jury question. In an arm's-length transaction such as this, "[a] purchaser must use reasonable care for his own protection and cannot rely blindly on the seller's statements but must make use of his means of knowledge and failing to do so, cannot claim that he was misled." *Miller et ux v. Protrka et ux,* 193 Or 585, 598, 238 P2d 753 (1952); *see also Coy v. Starling, supra,* 53 Or App at 81. From even a cursory examination of the financial statement provided to defendants it is apparent that the gross income of Blue Mountain included vending machine product sales as well as other sales, and that food products were purchased from other than vending machine suppliers. By the exercise of reasonable care, defendants should have known that the gross profits shown were not exclusively from vending machine product sales. Defendants failed to establish a *prima facie* case of fraud.

Affirmed.