**Arwen BIRD Plaintiff,**

v.

**LEWIS & CLARK COLLEGE, Thomas Darrow, Ph.D., and Larry A. Myers, Defendants.**

**No. CIV. 98–691–AA.**

United States District Court, D. Oregon.

May 24, 2000.

Elizabeth A. Carl, Portland, OR, Kevin Karp, Reno, NV, for plaintiff.

David A. Ernst, Clay D. Creps, Bullivant Houser Bailey, Portland, OR, for defendants.

## OPINION AND ORDER

AIKEN, District Judge.

Plaintiff, Arwen Bird, filed nine claims against the defendants. They were: violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehab Act"), violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, 12181–12189, 12203 ("ADA"), breach of contract, breach of fiduciary duty, defamation, negligence, fraud, negligent misrepresentation, and intentional infliction of emotional distress. Defendants moved for summary judgment on the following four claims: violation of the Rehab Act, violation of the ADA, defamation, and intentional infliction of emotional distress. Defendants also moved for partial summary judgment on the negligence claim. The motion was granted as to plaintiff's claims for defamation and intentional infliction of emotional distress, and denied as to all other claims.

The defendants now bring a second motion for summary judgment against all of plaintiff's remaining claims for relief. That motion is denied.

Plaintiff files a cross-motion for summary judgment on all claims for liability. That motion is also denied.

### Factual Background

As a student at Lewis and Clark College ("the college"), plaintiff, a paraplegic, participated in an overseas program to Australia. The program was administered by the college during the spring of 1996. Plaintiff alleges that during her stay in Australia, defendants failed to reasonably accommodate her disability thus resulting in violations of two federal laws, and Oregon state laws that govern claims of tortious conduct. Plaintiff alleges, among other claims, that she was subjected to unsafe toilets, forced catheterization, made to use unsanitary medical supplies, and denied participation in many class activities due to her disability.

Plaintiff is a citizen of the United States and a resident of Oregon. The college is an Oregon nonprofit corporation with its primary place of business in Portland, Oregon. Both named defendants were employed by the college and acting within the course and scope of their employment during the relevant time period. The defendants' conduct giving rise to this lawsuit occurred outside the United States in Australia.

## Standards

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The materiality of a fact is determined by the substantive law on the issue. *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Electrical,* 809 F.2d at 630.

## Discussion

### I. *Violation of the Rehab Act and the ADA*

Plaintiff has alleged violations of Title III of the ADA and violations of the Rehab Act based on defendants' alleged failure to accommodate her needs and due to discriminatory acts while she was in Australia.

As a recipient of Federal financial assistance, there is no dispute that the college must comply with both the Rehab Act and the ADA.

Title III of the ADA provides:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to) or operates a public accommodation.

42 U.S.C. § 12182(a). The Rehab Act, upon which the ADA is modeled, similarly provides:

No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefit of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]

29 U.S.C. § 794(a).

Because both of these statutes apply to federally funded educational institutions, courts frequently analyze discrimination claims under these statutes under the same rubric.

■ To prevail on a claim under the Rehab Act, plaintiff must prove that: (1) she is disabled as defined by the Act; (2) she is otherwise qualified for the position sought; (3) she has been excluded from the position solely because of her disability; and (4) the position exists as part of the program or activity receiving federal financial assistance. *Knapp v. Northwest-*

*ern University,* 101 F.3d 473, 478 (7th Cir.1996).

■ Similarly, to prevail on her claim under Title III of the ADA, plaintiff must show: (1) that she is disabled within the meaning of the Act; (2) that the defendant is a private entity that owns, leases or operates a place of public accommodation; (3) that the defendant took adverse action against the plaintiff that was based on the plaintiff's disability; and (4) that the defendant failed to make reasonable modification that would accommodate the plaintiff's disability without fundamentally altering the nature of the public accommodation. *Amir v. St. Louis University,* 184 F.3d 1017, 1027 (8th Cir.1999).

The ADA specifically finds discrimination to include:

> A failure to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.

42 U.S.C. § 12182(b)(2)(A)(ii).

The regulations implementing the Rehab Act also require an educational institution that accepts federal funds to make such modifications to its academic requirements as are necessary to ensure that such requirements do not "have the effect of discriminating, on the basis of handicap, against a qualified handicapped applicant or student." 34 C.F.R. § 104.44.

Defendants argue that the Australia overseas program provided by the college, when taken in its entirety, accommodated the plaintiff and enabled her to participate in the program. The defendants further argue that they were not required to give the plaintiff the accommodation of her choice, but that the accommodation offered must have been reasonable. Lastly, the defendants argue that the college's concern for student safety is permitted under the statute, and that concern is a valid basis to shape any accommodations.

■ The defendants contend that this court should find, as a matter of law, that the Australia overseas program afforded the plaintiff an "equal opportunity to achieve equal results." *See* 34 C.F.R. Pt. 104, App. A, Subsection 6. Specifically, the defendants argue that the "undisputed evidence" demonstrates that the defendants reasonably accommodated plaintiffs' disability during the Australia program. *See* Defendants' Memo in Support of Summary Judgment, p. 19. Plaintiff responds that "[d]efendants' motion is entirely dependent upon a rendition of the facts that is so far from the truth that it would be humorous if the circumstances and conditions plaintiff faced in Australia had not become so serious." Plaintiffs' Response, p. 7.

Defendants allege, as an example of reasonable accommodation, that while at Lamington Plateau, plaintiff was given "the first choice of campsites near an accessible restroom in order to enable her to assess the terrain and choose which location was most accessible for her." Defendants' Memo in Support, p. 11. Plaintiff disputes defendants' alleged accommodation and argues that it was not an accommodation at all. Instead, plaintiff contends "that the restroom at Lamington was not wheelchair accessible from any campsite—it was down a gravel hill from all of the campsites." Plaintiff's Response, p. 8.

The defendants argue that the college hired two students as "caregivers" to plaintiff in order to "assist her with her personal needs." Defendants' Memo in Support, p. 9. Dale Holloway, the coordinator of Student Support Services at the college, testified that the two students were assigned to plaintiff specifically because it was anticipated that plaintiff would encounter situations where restroom facilities were not accessible to her. Holloway dep., p. 31.

Plaintiff contends that these two students were participants in the overseas program who paid tuition just like the other students. They were paid a small amount per hour for the time they spent assisting plaintiff, averaging approximately one hour per day. Pl. Aff. ¶ 10, 11, Ex. 4. They had no training and were given no instructions other than to "help" plaintiff.

The parties dispute the job parameters, roles, and appropriate tasks which were to be assumed by these two student "helpers." Defendants contend that it was reasonable to have the student helpers carry plaintiff into allegedly inaccessible toilets, obstructed shower stalls, inaccessible buses, and up stairs into inaccessible classrooms. Ex. 5; Pl Aff. ¶ 11, 22, 24; Ex. 6, Day 36. Plaintiff responds that it was never her understanding or expectation that her two helpers would be providing her with accessibility by carrying her. Instead, plaintiff testified that she understood the role of the student helpers to be providing assistance such as carrying her bags, assisting in camping chores such as pitching her tent, and doing her laundry.

Plaintiff, in fact, controverts and disagrees with every one of defendants' listed "accommodations" regarding not only the specific terms of each accommodation, but also asserting that some of the listed items do not even qualify as accommodations. See Plaintiff's Response, p. 8–12 (and accompanying references to record citations). After reviewing the voluminous exhibits attached in support of both parties' summary judgment motions, including conflicting deposition testimony, the court cannot rule, as a matter of law, that defendants either did or did not accommodate the plaintiff in accordance with applicable law. The record is replete with factual disputes about the events that transpired over the fifteen week period, and the extent and nature of the accommodations offered plaintiff during her stay in Australia.

Defendants' summary judgment motion on plaintiff's Rehab Act and ADA claims is denied. Plaintiff's motion for summary judgment as to liability only on these claims is also denied.

## II. *Breach of Contract*

Plaintiff characterizes her contract with the defendants as one where she was to "pay tuition, expenses and fees," and the college "was to provide the Program, including accommodations made reasonable and necessary by plaintiff's disability." Second Amended Complaint, ¶ 61. "[T]he basic legal relation between a student and private university or College is contractual in nature. The catalogs, bulletins, circulars, and regulations of the institution made available to the matriculant became a part of the contract." *Ross v. Creighton University,* 957 F.2d 410 (7th Cir.1992) (internal quotation omitted).

> To state a claim for breach of contract, the plaintiff must do more than simply allege that the education was not good enough. Instead he must point to an identifiable contractual promise that the defendant failed to honor. [For example, where a defendant university took tuition money and provided no education, or alternatively, promised a set number of hours of instruction and then failed to deliver; or when a professor declined to give lectures and final exam, and all students received a grade of "B," internal citations omitted]. The essence of plaintiff's complaint would not be that the institution failed to perform adequately a promised educational service, but that ... it failed to perform that service at all. Ruling on this issue would not require an inquiry into the nuances of educational processes and theories, but rather an objective assessment of whether the institution made a good faith effort to perform its promise.

*Id.*

The *Ross* case involved an extremely gifted, highly recruited basketball player who was "academically disadvantaged." *Id.* at 411. The Seventh Circuit reversed the trial court's dismissal of Ross' breach of contract claim, holding:

We read Mr. Ross' complaint to allege more than a failure of the University to provide him with an education of a certain quality. Rather, he alleges that the University knew that he was not qualified academically to participate in its curriculum. Nevertheless, it made a specific promise that he would be able to participate in a meaningful way in that program because it would provide certain specific services to him.

*Id.* at 417. *Ross* involved a specific student with individual needs; defendant university understood those needs and agreed it would "provide specific services." Similarly, defendants here were dealing with a specific student with individual needs. As in *Ross,* after a period of negotiations, the parties came to a specific, individualized agreement. That agreement involved the defendants' provision of certain services or accommodations allowing the plaintiff to participate fully in the overseas program. As noted above, there is rampant disagreement and dispute about what exactly those accommodations were and whether they were reasonably adequate.

The court finds many material issues of disputed fact, therefore, defendants' and plaintiff's summary judgment motions on this claim are denied.

### III. Breach of Fiduciary Duty

Under Oregon law, a fiduciary duty exists

> where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing the confidence.

*Bennett v. Farmers Ins. Co. of Oregon,* 150 Or.App. 63, 80, 945 P.2d 595 (1997) (internal quotation omitted).

The parties agree that oregon courts have not addressed the issue of whether an academic institution acts as a fiduciary or occupies a position of trust and confidence in relation to its students. However, to the extent that plaintiff alleges that she "reposed a special confidence" in defendants because of her disabled status and the fact that the program took place in a foreign country, the defendants argue that the "undisputed evidence" shows that defendants did not breach a duty. Specifically, defendants argue that they did, in fact, accommodate plaintiff's disability.

As quoted above, a fiduciary duty exists where "there has been a special confidence reposed." *Id.* at 80, 945 P.2d 595. Further, in *Starkweather v. Shaffer,* 262 Or. 198, 497 P.2d 358 (1972), the court held that "a fiduciary duty exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing the confidence."

The plaintiff alleges that when she returned from her automobile accident onto the campus, she noted some accessibility problems that she encountered on the campus. In response, the plaintiff alleges and the defendants acknowledge, these problems were promptly resolved. Plaintiff alleges that this conduct by the defendants continued, and as a result, a relationship began to develop over the following years. Plaintiff argues that the result was that she reposed growing trust and confidence in defendants. Ultimately, plaintiff asserts that the defendants represented to her that they would take care of her situation overseas and attempt to meet her special needs. Plaintiff alleges that those needs were discussed and specified over the year prior to the start of the trip. Plaintiff argues that when the defendants said they understood her needs and would strive to meet them, they were dealing with an individual plaintiff who trusted and reposed a "special confidence" in them.

I find that the allegations contained in plaintiff's amended complaint, as well as the extensive record before this court, are sufficient to state a claim for breach of fiduciary duty. Further, I find there exists disputed issues of material fact as to the substance of the claim. Defendants' and plaintiff's summary judgment motions on this claim are denied.

## IV. *Negligence*

■ The parties agree on the law that applies to plaintiff's claim of negligence, specifically that the general foreseeability standard of *Fazzolari v. Portland School District No. 1J*, 303 Or. 1, 734 P.2d 1326 (1987), is the appropriate standard to apply. Under that standard, the plaintiff is required to allege facts from which a factfinder could determine: (1) that defendants' conduct caused a foreseeable risk of harm; (2) that the risk is to an interest of a kind that the law protects against negligent invasion; (3) that defendants' conduct was unreasonable in light of the risk; (4) that the conduct was a cause of plaintiff's harm; and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendants' conduct negligent. *Slogowski v. Lyness*, 324 Or. 436, 441, 927 P.2d 587 (1996) (internal quotation omitted).

■ Defendants then argue questions of disputed fact in support of their motion for summary judgment. Defendants assert that their conduct did not create a foreseeable risk of harm to plaintiff "because defendants did everything in their power to accommodate plaintiff's disability." Defendants' Memo, p. 24. Defendants argue that "it was only plaintiff's personal desire that the accommodations be such as to allow her complete independence in her personal care." *Id.* Plaintiff asserts that not only did the defendants fail to accommodate her but that she suffered discrimination and was put in situations that compromised her physical safety by the following: inaccessible toilets, bathing areas, sleeping areas, eating facilities, libraries, housing, areas used by the students to study, and the GED facilities when she needed to seek medical attention.

Plaintiff also moves for summary judgment on this claim arguing that "clearly defendants negligently caused harm to plaintiff's protected interests. The only question for the jury should be the amount of damages." Plaintiff's Response, p. 31.

Defendants' motion for summary judgment and plaintiff's motion for summary judgment as to liability are denied. The court finds extensive questions of disputed fact prohibiting any ruling "as a matter of law" as to whether the defendants were negligent.

## V. *Fraud and Negligent Misrepresentation*

■ In order to prevail on her fraud claim, plaintiff must prove the following:

(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of the falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury.

*Johnson v. Jeppe*, 73 Or.App. 430, 438, 698 P.2d 1020 (1985) (internal quotation omitted).

■ The tort of negligent misrepresentation requires that one party in a relationship owe a duty "beyond the common law duty to exercise reasonable care to prevent foreseeable harm" to the other party. *Conway v. Pacific University*, 324 Or. 231, 236, 924 P.2d 818 (1996). "In other words, for the duty to avoid making negligent misrepresentations to arise, the parties must be in a 'special relationship,' in which the party sought to be held liable had some obligations to pursue the interests of the other party." *Id.*

■ Plaintiff relies on at least one material nondisclosure in support of her claims for fraud and negligent misrepresentation.

Plaintiff alleges that the defendants failed to disclose to her "GED's inexperience and lack of knowledge concerning persons who are paralyzed from the waist down and must use a wheelchair." Second Amended Complaint, para. 91. GED was

retained by the college as their agent to operate the overseas program in Australia.

Plaintiff alleges that there were conflicting communications between the defendants and her concerning whether or not GED had prior experience with persons with disabilities. The plaintiff alleges that defendant Darrow assured plaintiff's parents that GED had prior experience with persons more physically challenged than the plaintiff, when in fact, the record now supports the fact that GED had no prior experience with persons with disabilities such as plaintiff's.

Further, plaintiff alleges that she and her mother discussed plaintiff's special needs in an ongoing dialogue with defendants and their representative from GED prior to the start of the program. Plaintiff alleges that she was reassured by defendants and their representatives in Australia that they were aware of her special needs. Plaintiff alleges that she and/or her mother discussed with the defendants restroom facilities, access to dormitories and classrooms, access to buildings that had steps, as well as access to specific educational experiences which were part of the program.

Plaintiff alleges that the defendants knew she was relying on them and had placed her confidence in their judgment. Plaintiff alleges that her reliance was based, in part, upon the defendants' actions and response upon her return to campus after her injury, whereby the defendants actually accommodated her special needs in many instances. Therefore, based on the defendants' past behavior and their (alleged) current expressions of understanding of her needs and representations that they knew the sites and locations at issue, plaintiff relied on them and placed confidence in their judgment.

I find there exists disputed issues of material fact surrounding these claims and preventing the entry of summary judgment for either party. Therefore, defendants' and plaintiff's summary judgment motions are denied.

## VI. Defendant Larry Meyers

Meyers was the Director of the Overseas/Off Campus Programs for the college. Defendants argue that he should be dismissed from this lawsuit as he was not personally liable for conduct that occurred in Australia.

The plaintiff alleges that Meyers was an integral part of the pre-trip activity, including the planning that occurred for plaintiff's participation in the Australia program. The plaintiff asserts that as the person in charge, Meyers' failure to adequately plan for plaintiff's safe participation in the program led to the problems experienced by plaintiff, and eventually to this lawsuit.

Defendant's motion to dismiss Meyers from this lawsuit is denied. Plaintiff's allegation that Meyers was involved with and ultimately the person responsible for the planning and preparation of the Australia trip renders him an appropriately named defendant in this lawsuit. *See* Plaintiff's Response, p. 48–49 (plaintiff's allegations of specific acts and omissions by Meyers).

### Conclusion

Defendants' supplemental motion for summary judgment (doc. # 86) is DENIED. Plaintiff's cross-motion for summary judgment as to liability (doc. # 95) is denied.

Further, the parties requests for oral argument are denied. IT IS SO ORDERED.